IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEMETRIC GRAY PEARSON,        *
       Plaintiff,

                         *

    v.                             CIVIL ACTION NO. RDB-03-2284

                         *

MARY ANN SAAR, et al.,
       Defendants.        *

                   ******

## <u>MEMORANDUM OPINION</u>

On August 6, 2003, Plaintiff filed this civil rights action pursuant to 42 U.S.C. §1983 seeking compensatory damages and injunctive relief.[1] (Paper No. 1). The case was placed on inactive-unassigned status on August 26, 2003, and not placed on the active docket until August 16, 2005. (Paper Nos. 3 and 7). Counsel for Defendants Mary Ann Saar and former Warden James Peguese have filed a dispositive motion (*see* Paper No. 32) which shall be treated as a Motion for Summary Judgment. Plaintiff has filed an opposition thereto. (Paper No. 37). No hearing is needed to resolve the issues raised in the Complaint. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion is GRANTED.

## I. BACKGROUND

On September 24, 2002, Plaintiff was placed on disciplinary segregation and subsequently adjudicated guilty at a disciplinary hearing. (Paper No. 1). Plaintiff maintains that as a result of the disciplinary hearing, his security level was increased "for what is deemed as verbal misconduct."

---

[1] During the pendency of this action, Plaintiff was released from confinement. (Paper No. 39). The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)*; Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)*; see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the Court that Plaintiff is no longer incarcerated, his request for injunctive relief has been granted and/or rendered moot.

He states that inmates accused of more serious offenses remain in minimum and medium security and that the punishment for his offense was disproportionate to the offense committed.   Plaintiff also claims that he was improperly transferred from Roxbury Correctional Institution to the Maryland House of Correction Annex.  He states that this transfer prohibited him from participating in the "Changing Your Ways Program" for early release from disciplinary segregation. (*Id*.).

As a result of being housed on disciplinary segregation, Plaintiff was prohibited from having: a prison job which would allow him to earn industrial credits toward early release; contact visits; daily showers and outdoor recreation; unfettered access to the library; daily telephone use; and the same amount of property permitted to non-segregation inmates.  He further states that as a result of being housed on disciplinary segregation he was denied the opportunity to participate in religious services, including being baptized. He was also denied the opportunity to watch television or listen to a radio.  Lastly, he claims he was not permitted to order extra food from the commissary.  (*Id*).

## II. STANDARD OF REVIEW

### A.     Summary Judgment

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997)(*citing Anderson,* 477 U.S. at 255).  The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.

1991).  The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion.  *Anderson*, 477 U.S. at 252.

**B.**     **Res Judicata**

To the extent Plantiff's complaint alleges that his security classification was improperly raised and/or that his transfer from RCI to MHC-X was improper, those issues were previously addressed by this court in *Pearson v. Saar*, Civil Action No. PJM-03-517 (D. Md. 2003). Under the doctrine of *res judicata*, a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action.  *See Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000), *quoting Montana v. US*, 440 U.S. 147, 153 (1979).  The doctrine precludes litigants from retrying issues that were or could have been raised in a prior action.  For the doctrine to apply, there must be (1) a final judgment on the merits in the prior suit; (2) an identity of the cause of action; and (3) an identity of the parties or their privies.  *See Meekins v. United Transportation Union*, 946 F.2d 1054, 1057 (4th Cir. 1991).  Issues surrounding Plaintiff's  assignment to disciplinary segregation, the increase in his security classification,   and his eventual transfer between facilities were previously addressed by this Court and shall not be considered anew here.

## III.  ANALYSIS

**A.**     **Programs**

Plaintiff's claims that his transfer from RCI prohibited him from participating in a program and that his disciplinary segregation status prevented him from obtaining a prison job provide him with no basis for relief. In order to state a claim for denial of due process under the Fourteenth Amendment, Plaintiff must allege that a constitutionally protected life, liberty or property interest was at stake.  The Constitution itself does not give prisoners an interest in being classified to a

particular prison, security level or job.  *See Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution.").

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Sandin v. Conner*, 515, U.S. 472, 484 (1995).  Being denied a reduction to a lesser security status, a transfer to a minimum security institution, and placement in favorable prison programs are simply not atypical or significant hardships in ordinary prison life.  *Id*. Likewise, prisoners do not have a constitutionally protected right to work while incarcerated or to remain in a particular job once assigned.  *Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978).

**B.      Conditions**

As to Plaintiff's claim that he was denied contact visits, daily showers, outdoor recreation, daily telephone use, personal property, television and radio access, unfettered library access and commissary privileges, the Court notes that conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.[2]  *See Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).  Conditions which are merely restrictive or even harsh, "are

---

[2]To the extent Plaintiff maintains that the denial of these privileges to disciplinary segregation inmates violates his liberty interests, his claim fails.  Such denial does not create a significant and atypical hardship.  *See Sandin v. Conner*, 515, U.S. 472, 484 (1995); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995).

4

part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).  Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297(1991) (quotations omitted).  Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32  (1993). "[T]o withstand summary judgement on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Defendants concede that inmates housed on disciplinary segregation are only permitted to use the telephone for emergency calls, are not permitted television and radio, and have limited access to property. (Paper No. 32).   Defendants also state that while housed on disciplinary segregation Plaintiff was permitted to request books through the library clerk or through institutional mail, and was also permitted access to legal reference materials.  Inmates housed on disciplinary segregation may order from the commissary: however, they are not permitted to order food.  (Paper No. 32, Ex. 3 and 4).  Plaintiff has not alleged, much less demonstrated, that he suffered any injury as a result of being deprived the numerous privileges he catalogues due to his assignment on

disciplinary segregation.[3]

## C.     Recreation

As to Plaintiff's complaint that he was denied daily out of cell recreation while housed on disciplinary segregation, the Court is mindful that the United States Court of Appeals for the Fourth Circuit has recognized that, in general, prisoners should be permitted some regular out of cell exercise, *see Mitchell v. Rice,* 954 F.2d 187, 191-92 (4th Cir. 1992).  Division of Correction Directive #110-6 specifies that each warden shall implement an institutional directive which provides, where practicable, for out-of-cell activity at least five days per week for one hour each day.  (Paper No. 32, Ex. 4).  Defendants have offered no evidence that Plaintiff was in fact provided five hours of out-of-cell activity per week, and thus have failed to rebut Plaintiff's allegation that he only received three hours of out-of-cell recreation per week.  Taking Plaintiff's statements as true, however, the Court finds that he has failed to allege any injury as a result of the denial of out-of-cell recreation time.

## D.     Religion

Plaintiff alleges generally that while housed on disciplinary segregation he was denied the opportunity to participate in congregate prayer services, which denied him the ability to be baptized. Again, Defendants fail to provide any specific information regarding Plaintiff's experience on disciplinary segregation, instead noting that disciplinary segregation inmates are denied congregate services but are permitted access to a chaplain and worship in their cells. (*Id.*)

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges

---

[3]In his original Complaint, Plaintiff claims that while housed on disciplinary segregation he was "not allowed to go to the library and read a variety of books instead of having books choosen for him to read by the inmate workers."  (sic) (Paper No. 1).  In his response to the dispositive motion he for the first time alleges that his lack of access to the library impacted his ability to access the courts. This allegation was not contained in his original complaint and will not be considered by this Court.

and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  That retained right is not unfettered.  Prison restrictions that impact on the free exercise of religion, but are related to legitimate penological objectives do not run afoul of the constitution.  *See Turner v. Safely*, 482 U.S. 78, 89– 91 (1987).

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA).  The act provides in part that:

> [n]o government  shall impose a substantial burden on the religious exercise  of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

Prior to the enactment of RLUIPA, the Fourth Circuit  held that all congregate prayer services may be denied for segregated inmates where other forms of religious exercise are permitted. *See In re Long Term Administration Segregation of Inmates Designated as Five Percenters*, 174 F.3rd 464, 470 (4th Cir. 1999).  After review of post-RLUIPA cases decided by the Fourth Circuit, this Court finds that the same reasoning for upholding the denial of congregate prayer to segregation inmates articulated in *In re Five Percenters* would survive strict scrutiny under RLUIPA.  *See Sutherland v. Angleone*, ____ F.3d ____ , 2006 WL 733976 (4th Cir. March 21, 2006) (noting the court's  continuing  obligation  under RLUIPA  to  defer  appropriately  to the  expert  opinions  of

experienced prison administrators in prison policy matters). While Plaintiff was housed on disciplinary segregation he was permitted access to a chaplain and permitted to worship in his cell. He was also able to possess religious materials.  (Paper No. 32, Ex. 4).  Accordingly, the Court concludes that neither his First Amendment rights nor any statutory rights under RLUIPA were impermissibly impacted by his being housed on  disciplinary segregation.

### IV. CONCLUSION

For the foregoing reasons, a separate Order will be entered granting Defendants' dispositive Motion and entering judgment in favor of the named Defendants and against Plaintiff.

May 15, 2006                                          /s/
   Dated                                                    RICHARD D. BENNETT
                                    UNITED STATES DISTRICT JUDGE